UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAE ANN JOHNSON,

          No. 13-11463

    Plaintiff,          District Judge Gershwin A. Drain

v.          Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

       Plaintiff Rae Ann Johnson ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

## I.  PROCEDURAL HISTORY

       Plaintiff applied for DIB on May 8, 2010, alleging disability as of July 15, 2006 (Tr. 178, 191). On August 31, 2011, Administrative Law Judge ("ALJ") Jessica Inouye conducted an administrative hearing, held in Mount Pleasant, Michigan (Tr. 82). Plaintiff,

represented by attorney Daniel Pollard, testified, (Tr. 88-118), as did vocational expert ("VE") Donald Hecker (Tr. 119-125). On September 20, 2011, ALJ Inouye found Plaintiff not disabled (Tr. 77).

On February 2, 2013, the Appeals Council declined to review the administrative decision (Tr. 1-5). Plaintiff filed suit in this Court on April 1, 2013.

## II. BACKGROUND FACTS

Plaintiff, born September 15, 1963, was 48 at the time of the administrative decision (Tr. 77, 178). She completed high school and two years of college (Tr. 195) and worked previously as a cashier, customer service associate, customer service manager, floor clerk, and office assistant (Tr. 192). She alleges disability due to occipital neuralgia, depression, anxiety, and migraine headaches (Tr. 191).

### A. Plaintiff's Testimony

*Plaintiff's counsel prefaced the testimony by stating that his client's depression resulted from ongoing headaches* (Tr. 87). *He also stated that Plaintiff experienced "trigger finger"* (Tr. 87).

Plaintiff offered the following testimony:

She lived in a single family home with her husband and two youngest children (Tr. 88). She denied working since November, 2006 when she quit her job at Wal-Mart because she "just couldn't handle it anymore" (Tr. 89). She experienced a "nervous breakdown" (Tr. 89). Her son's diabetes diagnosis contributed to her stress (Tr. 89). During her tenure at Wal-Mart, she was a customer service manager, but later "demoted" herself to the position

of customer service desk representative (Tr. 90). Prior to working at Wal-Mart, she worked for a hospital in the following positions: housekeeper, registration department clerk, receptionist, and medical technician (Tr. 90). She lost her job as a technician when the hospital downsized (Tr. 91).

Plaintiff did not experience problems reading or performing simple calculations (Tr. 91). She was limited to driving short distances due to back and neck pain (Tr. 91). She stood 5' 4" and weighed 215 pounds (Tr. 92). She had not had medical insurance since November, 2006 (Tr. 93). Her husband collected Social Security disability payments due to degenerative disc disease (Tr. 94).

Plaintiff experienced depression for many years, but the condition worsened as she developed head and neck pain (Tr. 95). She had received muscle relaxers and trigger point injections for the head and neck aches (Tr. 95). Her headaches were triggered by walking for short distances, lifting even eight pounds, or sleeping in certain positions (Tr. 95-96). She obtained some relief from trigger point injections to the neck, but had not received injections in the past two years (Tr. 96). She took Tylenol #3 which gave her only limited pain relief (Tr. 96, 107). She took Fiorinal and naproxen every day(Tr. 107). She coped with severe headaches by using ice packs and sleeping (Tr. 96, 100-102). She experienced severe headaches two to three times a week lasting up to two days at a time (Tr. 101). Sitting for extended periods created back and neck pain (Tr. 96). She coped with back pain by lying down (Tr. 96). She attributed depressive symptoms to her physical condition (Tr. 97). Plaintiff estimated that she could sit up to two hours before requiring a position change (Tr.

97). She was unable to stand or walk for more than five minutes at a time (Tr. 98). She no longer received trigger point injections due to both insurance problems and "the doctor issue" (Tr. 99-100). She alleged that the headaches created concentrational problems (Tr. 106). Her current doctor had not restricted her activities as a result of headaches (Tr. 108). Because her current doctor was retiring soon, she was in the process of finding a new doctor (Tr. 108).

When not incapacitated with a migraine, Plaintiff was responsible for most of the household chores (Tr. 108). She grocery shopped with the use of a motorized shopping cart (Tr. 108). She spent her leisure time watching television, using the computer, and sending e-mail (Tr. 109). She visited her elderly parents every two or three weeks but denied going to church or meeting with friends (Tr. 110). She denied manipulative limitations (Tr. 11). She was able to perform self care chores and lift up to 15 pounds (Tr. 111). She continued to smoke (Tr. 113). She experienced occasional trigger finger in which her right third and fourth fingers would lock up, characterizing the condition as "an inconvenience" (Tr. 113-114). She had been advised by her family doctor in 2008 to avoid the use of power tools (Tr. 115). She was unable to afford surgery for the finger condition due to her lack of insurance (Tr. 115). Back pain created sleep disturbances and radiating leg pain and numbness (Tr. 116-117).

**B. Medical Records**[1]

---

[1] Records unrelated to the benefits claim have been reviewed in full but are omitted from the current discussion.

### 1. Treating Records

April, 2007, treating notes by Veronica E. Lorenzo, M.D. state that Plaintiff reported mid back pain (Tr. 335). She was given a sample of Skelaxin (Tr. 335). September, 2009 treating notes make reference to "neck injection[s]" (Tr. 324). August, 2007 treating notes by Dr. Lorenzo, stating that Plaintiff experienced sinus problems, note complaints of swollen hands and toe pain (Tr. 323-324). The following month, Plaintiff reported hand pain after "doing a lot of wood craft[s]" (Tr. 332). Dr. Lorenzo observed no signs of trigger finger (Tr. 332). In May, 2008, Plaintiff requested Toradol for neck pain (Tr. 330). She requested neck injections in July and October, 2008 (Tr. 329). February and May, 2009 records state that she received injections to the neck (Tr. 326-327). In August, 2009, Plaintiff reported swollen ankles, lower back pain, stress, and depression (Tr. 325). The following month, she received additional injections (Tr. 324). November, 2010 treating records note a diagnosis of trigger finger (Tr. 366, 369).

### 2. Non-Treating Records

In July, 2008, Nathalie Menendes, Psy.D. performed a consultative examination of Plaintiff on behalf of the SSA, noting reports of depression and anxiety dating back to 1991 (Tr. 298). Plaintiff alleged low motivation and low energy (Tr. 298). She denied current suicidal ideation or panic attacks (Tr. 298). She opined that she was unable to work due to headaches (Tr. 298). She currently took Lexapro for depression as well as a muscle relaxer and opiate pain relievers (Tr. 298). She denied any psychological counseling (Tr. 298).

Dr. Menendes noted that Plaintiff was able to establish a good rapport and wore clean

and casual clothes (Tr. 299). She presented with low self esteem but did not exaggerate symptoms (Tr. 300). She exhibited good short term memory (Tr. 300). Dr. Menendes assigned Plaintiff a GAF of 50,[2] opining that she could handle her own benefit funds (Tr. 301).

The following month, Ron Marshall, Ph.D. performed a non-examining Psychiatric Review Technique on behalf of the SSA, finding the presence of an affective disorder and anxiety-related disorders (Tr. 309, 313, 315). Under the "'B' Criteria," he found mild restriction in activities of daily living, no limitation in social functioning, and moderate limitation in "concentration, persistence, or pace" (Tr. 319). He found that Plaintiff could perform "rote tasks" (Tr. 321). Dr. Marshall also completed a non-examining Mental Residual Functional Capacity Assessment on behalf of the SSA, finding that Plaintiff experienced moderate limitations in understanding, remembering, and carrying out detailed instructions; working within a schedule; working without interruptions from psychologically based symptoms; and responding appropriately to workplace changes (Tr. 305-306). Dr. Marshall concluded that Plaintiff could perform "rote tasks," "work with others," and "follow simple instructions" (Tr. 307).

In August, 2010, Michael Brady, Ph.D. conducted a second consultative psychological evaluation on behalf of the SSA, noting Plaintiff's report of marital problems, low

---

[2] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *Diagnostic and Statistical Manual of Mental Disorders--Text Revision,* 34 ("*DSM-IV-TR*" )(4th ed.2000).

motivation, and depression (Tr. 338). Dr. Brady noted that Plaintiff was in contact with reality with a normal affect (Tr. 339). He found Plaintiff's ability to concentrate "impaired," adding that "[h]er ability to withstand the normal stressors associated with a workplace setting is poor due to her emotional struggles" (Tr. 341). He assigned her a GAF of 58[3] with a fair prognosis (Tr. 341).

The same month, Siva Sankaran, M.D. performed a consultative physical of Plaintiff on behalf of the SSA, noting Plaintiff's complaints of recently losing her health insurance and back problems (Tr. 344). Dr. Sankaran noted that an x-ray of the spine showing degenerative changes of the cervical spine (Tr. 344, 352). Plaintiff denied the use of an assistive device (Tr. 344). She reported that due to recent insurance problems, she was no longer able to receive trigger point injections (Tr. 345). She reported smoking one pack of cigarettes each day (Tr. 345). He noted the presence of trigger finger of the third and fourth fingers of the right hand, but observed that Plaintiff had a normal gait and manipulative functions (Tr. 346).

### C. Vocational Testimony

VE Hecker classified Plaintiff's former work as a benefits clerk and receptionist as exertionally sedentary and semiskilled.[4] (Tr. 120-121). The ALJ then posed the following

---

[3] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. *DSM-IV-TR* at 32.

[4]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or

question to the VE, taking into account Plaintiff's age, education, and work experience:

> [A]ssume an individual . . . [who] can perform work which is non-production paced; simple and unskilled, with an SVP of 1 or 2.[5] This work should be low stress, with only occasional changes in the work and occasional decision making required. This hypothetical individual could perform work in the light exertional range . . . fine and gross manipulation on the right to frequent. This individual should avoid concentrated exposure to vibrations, which include power tools. This individual should be restricted to a relatively clean work environment, meaning avoid concentrated exposure to extreme cold. This individual could perform postural activities occasionally of climbing ramps and stairs, stooping, crouching, kneeling, and crawling; no climbing of ladders, ropes, and scaffolds. Can this hypothetical individual perform Claimant's past work?

The VE responded that the above-limited individual would be unable to perform any of Plaintiff's past relevant work but could perform the light, unskilled work of a office cleaner (8,000 positions in the State of Michigan); packager (4,500); and inspector/checker (2,000) (Tr. 122). He stated that if the same individual were limited to lifting a maximum of 15 pounds and required the ability to sit up to two hours at a time and stand or walk for five minutes with an "at will" sit/stand option, the individual could work as a clerical

---

carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

[5] Specific Vocational Preparation ("SVP") measures the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C, http://www.occupationalinfo. org/appendxc 1 . html# II (last visited on April 16, 2014). An SVP of 1 or 2 refers to unskilled work. SSR 00–04p.

assistant (2,500) (Tr. 123). The above-stated packager job numbers would be reduced to 1,800 and the cleaner positions would be eliminated (Tr. 123). He testified that the inspector/checker testimony would remain unchanged (Tr. 123). He testified further that if the same individual were limited to eight pounds lifting, she could perform the job of a surveillance monitor (500); inspector/checker (sedentary) (2,500); and clerk (2,500) (Tr. 124). He stated that if the same individual were required to recline for two hours each day due to back pain, all work would be precluded (Tr. 125). He concluded by stating that his testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 125).

### D. The ALJ's Decision

Citing the medical records, ALJ found that Plaintiff experienced the severe impairments of "right middle and ring trigger fingers, degenerative disc disease, obesity, occipital neuralgia, hypertension, depression, and anxiety" but that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 70). She found that Plaintiff experienced moderate impairment in "concentration, persistence, or pace" (Tr. 71). The ALJ noted that despite the moderate concentrational impairments, Plaintiff could care for her children, play computer games, drive, and shop (Tr. 71). The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following additional restrictions:

> [She] can lift 15 pounds occasionally and 10 pounds frequently. She can sit for up to 2 hours at a time (with normal breaks) for a total of 6 hours during an 8-hour work shift. She can stand/walk for 5 minutes each at a time (with

>    normal breaks) for a total of 2 hours during an 8-hour workday. She must have the option to sit or stand at will while remaining at her workstation. She can frequently perform fine and gross manipulation on the right. She must avoid concentrated exposure to vibration, including power tools. She must avoid concentrated exposure to extreme cold. She can occasionally climb ramps and stairs. She can never climb ladders, ropes, or stairs. She can occasionally balance, kneel, stoop, crouch, and crawl. She can perform non-production rate paced work. She can perform simple, unskilled work with [an SVP] of '1-2.' She can perform 'low stress' tasks where there are only occasional changes in the work routine. She can occasionally make work-related decisions (Tr. 72).

Citing the VE's testimony, the ALJ determined that while Plaintiff was unable to perform her past relevant work, she could perform the work of a clerical assistant, packager, or inspector/checker (Tr. 77).

The ALJ partially discounted Plaintiff's claim of limitation as a result of trigger finger, citing evidence that she was able to open a jar, button clothing, write, pick up a coin, and tie her shoelaces (Tr. 73). She partially credited Plaintiff's claims by limiting her to the frequent (as opposed to *constant*) use of her right hand for exertionally light work (Tr. 73). The ALJ noted that she credited Plaintiff's claim of frequent headaches, but pointed out that the condition did not prevent her from monitoring the medical condition of her children and disabled husband, attending school functions, driving, shopping, cooking, cleaning, using a computer, and handling money (Tr. 75).

### III.   STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of*

*Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment

listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." 7 *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

### Plaintiff Has Not Established That a Remand Is Warranted

Plaintiff's counsel, relying on the same argument he has used in almost every one of his motions for summary judgment for various clients, argues that the hypothetical question to the VE did not account for Plaintiff's full degree of impairment. *Plaintiff's Brief* at 8-12, *Docket #9* (citing Tr. 121-125). Plaintiff's counsel seems to argue that the omission of key limitations from the hypothetical question, as alleged by Plaintiff at the hearing, invalidates the Step Five finding that she was capable of a significant range of work. *Id.* at 8-9 (citing *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994)).

It is well settled that a hypothetical question constitutes substantial evidence only if it accurately portrays the individual's physical and mental impairments. *Varley v. Commissioner of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Plaintiff's counsel appears to be alleging that the failure to include all of the professed limitations in the hypothetical question stems from the ALJ's erroneous rejection of Plaintiff's claims of disability. Therefore, before deciding whether the hypothetical question

accurately reflected her limitations, the Court must determine whether substantial evidence supports the ALJ's credibility determination.

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2. The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."*Id.* [6]

Plaintiff's argument that the credibility determination is not supported by substantial evidence is without merit. First, the ALJ credited a significant number of the alleged limitations. She acknowledged the professed limitations as a result of trigger finger by

---

[6]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

limiting Plaintiff's manipulative activities (Tr. 73). She partially credited Plaintiff's claims of frequent headaches, citing imaging studies showing moderate degenerative arthritis of the cervical spine (Tr. 73). The ALJ also stated that she limited Plaintiff to unskilled, non-production, exertionally light work with a sit/stand option in deference to the allegations of physical and mental limitations as a result of headaches (Tr. 74).

By the same token, the ALJ's rejection of Plaintiff's alleged *degree* of limitation is well explained and supported. The ALJ noted that the condition of trigger finger did not prevent Plaintiff from performed a wide range of manipulative activities (Tr. 73). She cited Plaintiff's account of her own activities which included taking care of her diabetic son and daughter with Attention Deficit Hyperactivity Disorder ("ADHD"); caring for her disabled husband; using a computer, shopping for groceries; and handling money (Tr. 75). Substantial evidence amply supports both the credibility determination and by extension, the ALJ's choice of hypothetical limitations. See *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994)(ALJ not obliged to include properly discredited allegations of limitation in hypothetical to VE). Because the ALJ's credibility determination was well supported and explained, she did not err in excluding the unsupported claims from the hypothetical limitations.

The brief by Plaintiff's counsel also contains a recitation of the "treating source rule," but is unaccompanied by any citation to a treating source opinion, much less how the ALJ erred in the analysis of the treating records. In fact, the brief does not contain even one citation to the medical transcript. The medical transcript, discussed above, does not contain

an opinion of limitation or disability by any of the treating sources.

I have also considered a one-sentence argument by counsel that his client's treatment was compromised by the lack of medical insurance as of November, 2006. *Plaintiff's Brief* at 12. Pursuant to SSR 96-7p, the ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment." However, the hearing transcript and administrative opinion indicate that the ALJ complied with the requirements of SSR 96-7p. First, Plaintiff's testimony, elicited by the ALJ, contains multiple references to the lack of health insurance (Tr. 95, 99, 114). Second, although Plaintiff presently argues (in effect) that her lack of health insurance since November, 2006 compromised her ability to obtain treatment, the medical transcript shows that at a minimum, she sought and received treatment between 2006 and November, 2010 for numerous health conditions unrelated to the disability claim, ranging from respiratory complaints to a biopsy of the breast. Third, while Plaintiff testified that she was unable to afford surgery recommended for the trigger finger condition, (Tr. 114) the medical transcript does not contain a recommendation for surgery. Although Plaintiff reported that she no longer received injections to the neck, she indicated that her inability to receive injections was at least in part attributable to finding a doctor willing to perform the procedure (Tr. 96, 99-100). As to the allegations of back pain, the ALJ correctly observed that the treating records do not contain a referral to a specialist or recommendations of physical therapy (Tr. 75). Likewise, the ALJ observed that although

Plaintiff alleged a "nervous breakdown" in November, 2006, she did not receive inpatient psychiatric hospitalization or even seek counseling (Tr. 75). Because the transcript shows that she was able to obtain needed treatment on a regular basis despite the alleged lack of health insurance, a remand on the basis that the ALJ did not abide by the requirements of SSR 96-7p is not warranted.

After having considered Plaintiff's claims of error and reviewing the transcript for *sua sponte* grounds for remand, I conclude that the ALJ's determination, well supported and explained, should remain undisturbed. *Mullen v. Bowen*, *supra*.

## VI. CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D.

Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: April 22, 2014         s/R. Steven Whalen
                              R. STEVEN WHALEN
                              UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on April 22, 2014, electronically and/or by U.S. mail.

                              s/Michael Williams
                              Case Manager for the
                              Honorable R. Steven Whalen